IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **TAYLOR MADISON FRANCOIS BODINE** | ) | **Case No. 21-11238-KHK** |
| | ) | **(Chapter 7)** |
| **Debtor** | ) | |
| ──────────────────────────── | ) | |
| | ) | |
| **LANI HAY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding** |
| | ) | **No. 21-01056-KHK** |
| **TAYLOR MADISON FRANCOIS BODINE** | ) | |
| | ) | |
| **Serve:** | ) | |
| **Taylor Madison Francois Bodine** | ) | |
| **42779 Travelers Run Lane** | ) | |
| **Leesburg, VA 20176** | ) | |
| | ) | |
| **Debtor.** | ) | |
| ──────────────────────────── | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, LANI HAY ("**Plaintiff**" or "**Hay**"), by and through her undersigned counsel, hereby files this First Amended Complaint against Debtor, TAYLOR MADISON FRANCOIS BODINE ("**Debtor**"), and in support thereof states as follows:

### Parties

1. On or about July 12, 2021 ("**Petition Date**"), the Debtor filed a Chapter 7 Petition in this Court.

Benjamin P. Smith (VSB 90430)
William B. Schroeder (VSB 43179, *pro hac vice* pending)
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
(301) 230-5200
(301) 230-5231
*Counsel for Plaintiff*

2. The Plaintiff is now a resident of California, who previously resided at all relevant times to this action in Loudoun County, Virginia.

3. The Debtor resides at 42779 Travelers Run Lane, Leesburg, Virginia 20176. The Debtor is also the owner and operator of Francois-Bodine Consulting (a/k/a FB Consulting).

4. The Debtor completed her undergraduate education at Louisiana Tech in political science and business and received a Juris Doctorate degree from American University Washington College of Law in 2018. *See* Deposition Transcript of Taylor Francois Bodine related to the instant claim ("**Bodine Depo,**" pp. 19-20). A copy of relevant portions of the Bodine Dep. Transcript is attached hereto as Exhibit 1.

## Jurisdiction and Venue

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523(a).

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391.

7. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O).

## Factual Background

8. By this Complaint, Hay seeks a determination that the indebtedness that the Debtor owes to Hay is non-dischargeable in accordance with 11 U.S.C. § 523(a)(2)(A), and for other relief as stated herein.

9. Hay provided the original amount of $50,000.00 in cash to Debtor, as evidenced by a certain Consulting Personal Introductions Agreement dated October 20, 2018 ("**Agreement**"). A copy of Agreement is attached hereto as Exhibit 2. Debtor offered to

introduce Hay to qualified, appropriate individuals ("**Candidates**") for the purpose of entering into a long-term romantic relationship/marriage.

10. In exchange for the $50,000 cash payment, Debtor fraudulently misled and induced Hay to reasonably believe that she would provide unique, personalized social introductions and matchmaking services to Hay based on Debtor's "special database.".

11. Specifically, Debtor made the following fraudulent, misleading statements and inducements to Hay on the morning of October 16, 2018, when they met in person for coffee:

   a. Debtor would provide social introductions to Hay to qualified Candidates "in the top 1% circle";

   b. Debtor would personally interview the Candidates that she recommended before and after the introductions;

   c. Debtor was a luxury, high quality matchmaker with a special and unique process;

   d. Debtor had nearly a "100% success rate" in matching successful people nationally across the country;

   e. Debtor regularly made social introductions to individuals in "the top 1%" circle of the Washington Metropolitan area, including U.S. senators and other high profile individuals that Debtor could not disclose to Hay for "privacy" reasons;

   f. Debtor owned and drove a red Maserati to the meeting and owned an 8,000 square foot apartment in Georgetown; and

      g. Debtor attended regularly diplomatic parties, visited celebrities and politicians, and participated socially in the same elite, professional circles as Hay.

12. Further, in email and personal conversations on October 18, 2018, at the Ritz Carlton at Pentagon City, Debtor made additional, fraudulent, misleading statements and inducements, including specifically:

      a. Hay's experience with her would be "unparalleled" to her prior experiences with matchmaking;

      b. Debtor would use a unique and specialized database to thoroughly "vet" and match Candidates personally to Hay;

      c. Debtor's services were "comprehensive, concierge, and personal;"

      d. Hay would have a "unique level of access to me [Debtor] and her contacts" that are "unprecedented" in the matchmaking industry;

      e. Debtor's staff and employees would regularly advise Hay on the progress and schedule time with Debtor to personally discuss and provide feedback before and after each introduction;

      f. Debtor "guaranteed" that she was better and more qualified than any national or international firm;

      g. Debtor promised that she would have a "distinguished level of dedication and time and commitment" to make a proper introduction to qualified Candidates for Hay; and

      h. Debtor required payment by cash, wire, money order or check in advance before any services could be provided.

13. In reliance on Debtor's oral and written statements, Hay researched Debtor's website and posts on social media, which included similar false, misleading, and untruthful statements about the nature, quality, and background of the Debtor and her matchmaking services. Debtor's written statements, website, social media, and YouTube posts and videos are adopted and incorporated herein by reference.

14. Debtor, however, did not intend to render such services and never intended to make proper social introductions to Hay, despite her materially false representations to the contrary.

15. Debtor required Hay to make payment of $50,000 in cash on October 19, 2018.

16. On October 20, 2018, in reasonable reliance on Debtor's false, misleading, and fraudulent promises and misrepresentations, Hay signed and returned the Agreement to Debtor.

17. If Hay had been aware of the truth that Debtor was not who she said she was, then Hay would not have agreed to, nor signed the Agreement.

18. If Hay had been aware of the truth that Debtor had no database, no staff, or any personal connection to any of the potential Candidates, then Hay would not have agreed to, nor signed the Agreement.

19. If Hay had been aware of the truth that Debtor only intended to refer Candidates from other unknown matchmakers across the country, then Hay would not have agreed to, nor signed the Agreement.

20. In connection with the Agreement, in days leading up to October 20, 2018, Debtor represented falsely to Hay that all of the Debtor's representations and information provided to Hay concerning her background and the matchmaking services for the purpose of obtaining a suitable Candidate for Hay to meet was true and accurate in all material respects.

21. If Hay had been aware of the truth about the Debtor's false, misleading, and fraudulent misrepresentations and inducements, then Hay would not have provided $50,000 in cash to Debtor.

22. As of the Petition Date, Debtor owed $50,000 to Hay, including interest and attorneys' fees pursuant to pursuant the Agreement and the underlying Lawsuit previously pending in the Circuit Court for Loudoun County, Virginia (Case No. 107-CL-19-00061300) ("**Lawsuit**").

23. Debtor falsely represented herself as a luxury matchmaking and elite relationship consulting firm in the Washington D.C. Metropolitan Area.

24. On her website and in person, Debtor falsely claimed to provide matchmaking services nationwide.

25. Debtor falsely promised Hay that Debtor would personally interview and investigate each and every Candidate that she introduced to Hay.

26. Debtor falsely promised to introduce Candidates to Hay that fell within the "top 1% circle" and the particular criteria, qualifications, and characteristics that Hay and Debtor discussed.

27. Debtor falsely promised to be available to prepare and debrief Hay for the social introductions to the Candidates.

28. Debtor falsely promised and Debtor represented that she and her "staff" had a unique and special process to identify qualified Candidates for Plaintiff that had "an almost 100% success rate."

29. Hay agreed to execute the Agreement and make payment of $50,000 in cash to Debtor, after reasonably relying on the Debtor's false promises and material misrepresentations.

30. Thereafter, Debtor provided Hay with four (4) completely inappropriate and fraudulent social introductions to prospective Candidates, requiring Hay to travel, incur costs, forego other activities, and make arrangements to meet the unacceptable Candidates proffered by Debtor.

31. Before each encounter with the prospective Candidates, Debtor represented falsely that the Candidates were appropriate, qualified, and met Hay's criteria, as part of the Debtor's "special" process to match Hay.

32. None of the Candidates were appropriate, qualified, or met Hay's criteria.

33. There was no "special database" or other process being used by the Debtor, contrary to the Debtor's misrepresentations, to identify any of the Candidates that Debtor proffered to Hay.

34. In reliance on Debtor's misrepresentations about the Candidates and the Debtor's "special" process, Hay traveled across country, missed time from work, and incurred additional expenses and costs, not including emotional costs and personal time, to prepare for meeting the Candidates.

35. The Candidates had never spoken with Debtor and/or were not at all familiar with her.

36. If Hay had known that the Debtor had never spoken with the Candidates before the encounters, then she would never have agreed or traveled to the encounters with the Debtor's proffered Candidates.

37. If Hay had known that the Debtor had no "special" process or database to make introductions to the Candidates, then she would never have agreed or traveled to the encounters with the Debtor's proffered Candidates.

38. If Hay had known that the Candidates were not appropriate or qualified and did not meet her criteria, then she would never have agreed or traveled to the encounters with the Debtor's proffered Candidates.

39. When Hay met the Candidates, it became clearer that the Debtor's proffered Candidates were inappropriate, not qualified, and did not know or were not familiar with Debtor, as she had falsely promised and represented.

40. After each encounter with the Candidates, Hay attempted to reach Debtor and her "staff," but only received sporadic email responses.

41. Debtor was suddenly not available to discuss any of the social introductions.

42. There was no "special" or "unique process" and no real due diligence was being undertaken with the social introductions that Debtor was making to Hay.

43. Debtor had no "staff," but instead was relying on undisclosed, other matchmaking individuals across the country.

44. In January and February 2019, instead of returning the $50,000 upon demand by Hay or providing proper Candidates for Hay to meet as Debtor had promised (and when Hay was able to reach Debtor), Debtor began blaming and criticizing Hay orally and in a series of lengthy email (which are adopted and incorporated herein by reference), falsely claiming that Hay was at fault, that Hay was "not what her photo presented," that Hay was changing her requirements, that Hay was unappealing to the Candidates, and that Hay was being too difficult and demanding, which are all part of Debtor's fraudulent scheme to blame her victims, which is the same scheme that she has employed against at least two (2) other consumers across the country.

45. Despite demand, Debtor refused to account for the $50,000 cash that she received and refused to return the funds when Hay discovered the fraud and demanded the return of her payment, less any expenses incurred.[1]

### COUNT I (Breach of Contract)

46. Hay adopts and incorporates herein the preceding Paragraphs as if fully stated herein.

47. An enforceable written contract in the form of the Agreement existed between Hay and the Debtor for personal, consumer services, for the purpose of making social introductions to Hay of proper, qualified Candidates.

48. In reasonable reliance on Debtor's promises and statements, Hay paid Debtor $50,000 and otherwise performed all of her obligations under the Agreement.

49. Despite her promises and statements to Hay, Debtor did not intend to perform the personal, consumer services Debtor agreed to perform under the Agreement, and in fact, Debtor failed to perform the services she was obligated to perform under the Agreement.

50. Debtor's failure to perform the personal, consumer services that she agreed to perform under the Agreement constitutes a material breach and default by the Debtor under the Agreement.

51. As a direct consequence of Debtors breach and material default under the Agreement, Hay has sustained damages.

WHEREFORE, Plaintiff, Lani Hay, demands the entry of a non-dischargeable judgment against the Debtor, Taylor Madison Francois Bodine, in the amount of not less than $50,000.00 in compensatory damages, plus an award of reasonable attorney's fees, pre-judgment and post-

---

[1] A comparsion copy of this First Amended Complaint is attached hereto as <u>Exhibit 3</u>.

judgment interest, and costs incurred in the prosecution of this case, in addition too such other and further relief as this Court deems just and proper.

### COUNT II (Violation of Virginia Consumer Protection Act)

52. Hay adopts and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

53. Hay is a consumer and Debtor is a supplier who process personal, consumer services to the public, as defined and contemplated by the Virginia Consumer Protection Act ("**VCPA**").  Va. Code § 59.1-197, *et. seq.*

54. Debtor falsely marketed and advertised herself and her business as a leading, luxury matchmaking and elite relationship consulting firm in the Washington, D.C. Metropolitan Area.

55. On multiple occasions, Debtor advertised, marketed, and made separate false and misleading promises and representations to Hay regarding the character and quality of her reputation, experience, and abilities; the nature, quality and character of her business; the nature, quality and character of the social introductions and process that she purportedly employed to identify and introduce proper, qualified Candidates to Hay.

56. Debtor's intentional misrepresentations and business practices were deceptive, misleading and injurious to Hay as a consumer and the public in general in violation of the VCPA.  *See* Va. Code § 59.1-200.

57. As a direct and foreseeable result of the reasonable reliance by Hay on the Debtor's material, false representations and her unfair and deceptive trade practices, Hay executed the Agreement and paid Debtor $50,000.

58. Debtor's material, false representations and unfair and deceptive trade practices were made with an actual, malicious intent and were part of a plan to defraud Hay for Debtor's personal financial gain in an abuse of Hay's trust as a consumer.

59. In reasonable reliance upon the Debtor's promises and representations, Hay spent time and incurred expenses in the preparation and performance of the Agreement, including traveling across the country to meet Candidates proposed by the Debtor.

60. But for Debtor's unfair and deceptive trade practices, Hay has sustained damages and would not have otherwise executed the Agreement.

61. Hay has suffered an actual injury and is entitled to sue under the VCPA. *See* Va. Code 59.1-204.

WHEREFORE, Plaintiff, Lani Hay, demands entry of a judgment against the Debtor, Taylor Madison Francois Bodine, in the amount of not less than $50,000.00 in compensatory damages, injunctive relief prohibiting future unlawful trade practices by the Debtor, plus an award of punitive or exemplary damages of not less than $150,000.00, in addition to an award of reasonable attorney's fees, pre-judgment and post-judgment interest, and costs incurred in the prosecution of this case, in addition too such other and further relief as Court deems just and proper.

## COUNT III (Fraudulent Inducement)

62. Hay adopts and incorporates herein the preceding allegations as if fully stated herein.

63. Debtor's statements were false and misleading, since Debtor mischaracterized and misstated the material facts about the quality and character of the personal, consumer services that she offered.

64. In particular, Debtor falsely stated that she provided high quality, elite matchmaking services and would make proper social introductions of Hay to qualified Candidates pursuant to her unique and special process after Debtor personally, met, interviewed and investigated each proposed Candidate.

65. Debtor's services were not high quality and Debtor did not have any special or unique process, nor did Debtor investigate, interview or propose proper Candidates to Hay as stated and promised by the Debtor.

66. Debtor did not, and could not, provide the high quality, elite matchmaking services Debtor promised to Hay.

67. Debtor was aware that she did not, and could not, provide the high quality, elite matchmaking services, and would not personally interview or vet Candidates when she promised to perform these services for Hay.

68. Debtor did not, and could not, make proper social introductions to qualified Candidates pursuant to any "special" process or after interviewing and investigating each Candidate, as Debtor had promised to Hay.

69. Debtor made these false statements and promises to Hay for the purpose of inducing Hay to execute the Agreement and having Hay pay the Debtor $50,000.

70. Debtor acted with malice and ill will in making the false statements and misleading representations, abusing Hay's information and trust for Debtor's own personal and financial motives.

71. Hay reasonably relied upon Debtor's knowing false statements of material facts to her detriment.

72. But for Debtor's knowing false statements of material fact, Hay would not have executed the Agreement, paid the Debtor $50,000, or incurred losses of time and money to meet Candidates.

73. As a result of Hay's reasonable reliance upon Debtor's knowingly fraudulent and misleading statements of material facts, Hay has suffered actual injuries and financial harm, including, but not limited to, the payment of the $50,000 to the Debtor by Hay.

WHEREFORE, Plaintiff, Lani Hay, demands entry of a judgment against the Debtor, Taylor Madison Francois Bodine, in the amount of not less than $50,000.00 in compensatory damages, rescission of the Agreement, and an award of punitive or exemplary damages including all attorney's fees, pre-judgment and post-judgment interest, and costs incurred by Plaintiff in this case, and such other and further relief as this Court deems just and proper.

## COUNT IV (Fraud – Nondischargeability)
## 11 U.S.C. § 523(a)(2)(A)

74. Hay incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

75. Debtor's statements of fact and promises to Hay that she made to induce Hay to execute the Agreement were false.

76. Specifically, Debtor mischaracterized and misstated the material facts about the quality and character of the personal, consumer services that she offered.[2]

77. Debtor falsely stated that she provided high quality, elite matchmaking services and would make proper social introductions to qualified Candidates, which she would personally

---

[2] Significantly, on October 16 and 18, 2018, Debtor also made false representations to Hay about the nature and characteristics of an "investment" that Debtor was claiming she owned and was "developing." Specifically, Debtor represented she was developing a matchmaking software application for a company that Debtor purportedly owned. Fortunately, Hay chose not to invest in Debtor's other company, which is also at issue and before this Court in Debtor's bankruptcy proceeding.

meet and vet herself, pursuant to her unique and special process after interviewing and investigating each Candidate that she proposed.

78. In reasonable reliance on Debtor's false representations, Hay signed the Agreement, paid Debtor $50,000 in cash, incurred additional expenses and costs, and agreed to meet the Candidates that Debtor proffered.

79. Debtor's services were not high quality and she did not have any unique or special process to interview, investigate, and propose proper Candidates to Hay.

80. Debtor did not, and could not, provide high quality, elite matchmaking services, as she had promised Hay.

81. Debtor did not, and could not, make proper social introductions to qualified Candidates pursuant to any "special" database or process or after personally interviewing and investigating each Candidate, as she had promised Hay.

82. The Debtor also falsely represented and proffered the Candidates to Hay, fraudulently misrepresenting to Hay that the Candidates were suitable, appropriate, and qualified as part of Debtor's "special" and unique process.

83. The Debtor's actions, misrepresentations, and false promises actually misled and deceived Hay, who acted reasonably and who believed Debtor in reliance on Debtor's actions and statements, traveling and meeting the Candidates, who were proffered fraudulently by Debtor.

84. Hay is also consumer and Debtor is a supplier who provides personal, consumer services to the public, as defined and contemplated by the VCPA.

85. Debtor falsely marketed and advertised herself and her business as a leading, luxury matchmaking and elite relationship consulting firm in the Washington D.C. Metropolitan Area.

86. On multiple occasions, as specifically described above, Debtor advertised, marketed, and made separate false and misleading promises and representations to Plaintiff regarding the character and quality of her reputation, experience, and abilities; the nature, quality and character of her business; the nature, quality and character of the social introductions and process that she purportedly employed to identify and introduce proper, qualified Candidates to Plaintiff.

87. Debtor actually did not intend to proceed with the terms of the Agreement and made false and misleading statements of material facts and future performance to induce Plaintiff to execute the Agreement, intending instead to accept Plaintiff's money, use it for her own personal benefit, and then fail to perform the services as promised and blame Hay for Debtor's failures and misrepresentations about the services.

88. Debtor's intentional misrepresentations and business practices, as outlined specifically above, were deceptive and misleading, tending to injure Plaintiff as a consumer and the public in general in violation of the VCPA. Va. Code § 59.1-200.

89. Debtor intentionally and actively concealed, misled, and deceived Hay, as specifically set forth above, about the nature and quality of her services.

90. Debtor acted with malice and ill will in making the false statements and misleading representations, as specifically described above, abusing Hay's personal information and trust for Debtor's own personal, financial motives.

91. Debtor's false statements and promises, as specifically set forth above, to Hay were misleading and caused actual injury to Plaintiff, specifically inducing Hay to make payment of $50,000 in cash to the Debtor and reasonably inducing Hay to incur time and costs in meeting the Candidates that Debtor falsely represented to her as appropriate, qualified, and personally interviewed by Debtor as part of her "special" and unique process and database.

92. Upon information and belief, Debtor took Hay's money and converted it for her own personal use and consumption, rather than using it in any way to perform any of her false promises and inducements made to Hay.

WHEREFORE, Plaintiff, Lani Hay, prays that this Honorable Court enter a judgment in her favor and against the Debtor, Taylor Madison Francois Bodine:

(1) for breach of contract and for violations of the VCPA as prayed for herein against the Debtor, Taylor Madison Francois Bodine, in the amount of not less than $50,000.00 in compensatory damages, plus an award of punitive or exemplary damages of not less than $150,000.00, in addition to an award of reasonable attorney's fees, pre-judgment and post-judgment interest, and costs incurred in the prosecution of this case;

(2) for fraud in the amount of not less than $50,000.00 in compensatory damages, rescission of the Agreement, and an award of punitive or exemplary damages including all attorney's fees, pre-judgment and post-judgment interest, and costs incurred by Plaintiff in this case;

(3) granting injunctive relief prohibiting future unlawful trade practices by the Debtor;

(4) determining that the judgment prayed for herein against the Debtor be, and is, non-dischargeable by the Debtor pursuant to 11 U.S.C. § 523(a)(2)(A), and

(5) granting such other and further relief as this Court deems just and proper.

    Respectfully submitted,

    **SHULMAN, ROGERS, GANDAL,**
     **PORDY & ECKER, P.A.**

By:   /s/ Benjamin P. Smith
    Benjamin P. Smith (VSB 90430)
    William B. Schroeder (VSB 43179, *pro hac vice*
    pending)
    12505 Park Potomac Avenue, Sixth Floor
    Potomac, Maryland 20854
    TEL:  (301) 230-5200
    FAX:  (301) 230-2891
    Email: bsmith@shulmanrogers.com
           wschroeder@shulmanrogers.com
    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2022, I filed a true and correct copy of the foregoing **First Amended Complaint** with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send a notification of electronic filing to all registered ECF users appearing in this adversary proceeding.

/s/ Benjamin P. Smith
Benjamin P. Smith
